**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

NICHOLAS FITTS and LORRAINE FITTS,

Plaintiffs,

vs. CA 07 – 147 ML

KING RICHARD'S AUTO CENTER, INC,
d/b/a East Providence Mitsubishi,

Defendant.

---

**Plaintiffs' Request To Withhold Ruling on Motions For Summary Judgment**

Now come the Plaintiffs and request the Court hold off on ruling on the pending Motions for Summary Judgment until it rules on the Plaintiffs' Motion To Amend and, if that motion is granted, until the Defendant has responded to the proposed Amended Complaint. In support of this request, the Plaintiffs state withholding a ruling on the motions would promote the efficient administration of just. They further rely on the accompanying Memorandum.

**Wherefore,** the Plaintiffs request a) the Court hold off on ruling on the pending Motions for Summary Judgment until it rules on the Plaintiffs' Motion To Amend and, if that motion is granted, until the Defendant has responded to the proposed Amended Complaint, and b) for such other relief as may be just and appropriate.

The Plaintiffs,
By Their Attorney,

/s/ John T. Longo

John T. Longo, Esq./#4928
681 Smith Street, Suite 201
Providence, RI 02908
(401) 272-2177

Fax (401) 537-9185
jtlongo@yahoo.com

**Certificate of Service**

I certify that on ___6/25/08___________ I electronically filed this document with the Clerk of the federal District Court for the District of Rhode Island using the CM/ECF System. The following participants received notice electronically:

Michael A. DeSisto, Esq. michael@desistolaw.com
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

/s/ John T. Longo
_______________________
John T. Longo, Esq./#4928

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

NICHOLAS FITTS and LORRAINE FITTS,

Plaintiffs,

vs. CA 07 – 147 ML

KING RICHARD'S AUTO CENTER, INC,
d/b/a East Providence Mitsubishi,

Defendant.

---

**Plaintiffs' Supplemental Memorandum of Law**
**In Opposition to Defendant's Motion for Summary Judgment**

and

**Plaintiffs' Memorandum In Support of Their**
**Request That The Court Withhold Ruling on Motions For Summary Judgment**

Now come the Plaintiffs, and submit this Memorandum both in response to the Defendant's Supplemental Memorandum in Support of Motion for Summary Judgment and in support of their Request that the Court withhold its ruling on the pending Motions for Summary Judgment. In their request, the Plaintiffs asked the Court to withhold ruling on the pending Motions for Summary Judgment until it rules on their Motion To Amend and, if that motion is granted, until the Defendant has responded to the proposed Amended Complaint.

## 1. Introduction

Two types of damages are available to plaintiffs who prevail on claims under the Truth In Lending Act (TILA): actual damages and statutory damages.[1] Actual damages are available for all TILA violations; statutory damages are only available for certain violations.[2] The Plaintiffs' possible entitlement to both are discussed below as is the rationale for the Plaintiffs' request that the Court hold off on ruling on the pending Motions for Summary Judgment.

Also briefly addressed in this Memorandum is the Plaintiffs' entitlement to mandatory attorney fees if they prevail on their TILA claim.

## 2. Statutory Damages

### A) Range of Statutory Damages

If the Plaintiffs prevail on their TILA claim, and the Court finds the TILA violation in question entitles them to an award of statutory damages, the Court would have to award them at least $100, and it could not award them more than $1,000, in statutory damages. [3] (There is no similar limit on any potential award of actual damages.)

### B) Entitlement to Statutory Damages

To be entitled to statutory damages the Plaintiffs need to prove a violation of one of the TILA provisions that triggers statutory damages; they do not have to prove motive, intent or even

---

[1] 15 USC §1640

[2] Id.

[3] 15 USC §1640(a)(2)(A)(ii)

that they were deceived.[4] The Plaintiffs therefore agree with the Defendant that they can recover statutory damages only if they can prove the Defendant King Richard's violated one of triggering provisions of the TILA.[5]

To determine what TILA provisions might trigger the Plaintiffs' entitlement to statutory damages, one must look to the last paragraph of 15 USC §1640 which states, in relevant part:

> **In connection with the disclosures referred to in section 1638 of this title** *[the section of TILA that deals with 'closed end' credit arrangements like the one at issue in this case]*, **a creditor shall have a liability determined under under paragraph (2)** *[the paragraph that imposes liability for statutory damages]* **only for failing to comply with the requirements** of section 1635 of this title *[a section of the law that is inapplicable because it deals with rescission issues that are not involved in this case]* or **of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title . . . ."** *[explanatory language and* ***bolding*** *added by Plaintiffs]*

Therefore, if in this transaction King Richard's failed to accurately disclose any of the following figures required by 15 USC §1638(a), it has violated the TILA and the Plaintiffs are entitled to statutory damages:

| | |
|---|---|
| 15 USC §1638(a)(2) | Amount Financed |
| 15 USC §1638(a)(3) | Finance Charge |
| 15 USC §1638(a)(4) | Annual Percentage Rate[6] |

---

[4] Attached as Exhibit A is a copy of §8.6.1 from Truth In Lending, Sixth Edition 2007, a major treaties on the subject published by the National Consumer Law Center, that discusses the availability, purpose and character of statutory damages under TILA.

[5] Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment, page 3.

In their Motion for Summary Judgment the Plaintiffs argued that in the "Itemization of Amount Financed" section of the RISA, which breaks down the "Amount Financed" figure required by 15 USC§1638(a)(2), King Richard's listed an inaccurate amount. Specifically, King Richard's listed the Plaintiffs' "Total Down Payment" on the Mercedes they bought as $353.28, which it asserted was the "Net" of their trade-in.[7] In fact, the Plaintiffs had negative equity in their trade in. The Plaintiffs continue to contend that failure to properly disclose the negative equity in the manner dictated by Regulation Z was a violation of TILA entitling them to actual damages.

To clarify their position regarding statutory damages, the Plaintiffs contend that King Richard's' inaccurate disclosure of the "Net" trade-in as $353.28 (instead of $0) led to the inaccurate disclosures of the "Amount Financed", "Finance Charge", and "Annual Percentage Rate" on the RISA. That means Kings Richards failed to make accurate disclosures and the Plaintiffs are entitled to statutory damages.

The attached Exhibit C illustrates how the inaccurate $353.28 figure led to the other inaccurate disclosures. This table summarizes the calculations in that Exhibit:

[6] Each of these items is set forth in the "Federal Box" in the RISA at issue in this litigation. A copy of the RISA is attached as Exhibit B.

[7] The RISA containing the disclosure is attached as Exhibit B.

| | I | II[8] | |
|---|---|---|---|
| | As Disclosed On RISA | If "Net" trade in had been disclosed as $0 | Difference |
| Amount Financed | $21,619.72 | $21,973.00 | $353.28 |
| Finance Charge | $9,287.72 | $8,934.44 | $353.28 |
| Annual % Rate | 12.39% | 11.79% | .6%[9] |
| | | | |

***Table 1***

**3. Withholding Ruling on Motions For Summary Judgment**

The Defendant has provided an Affidavit purporting to explain the $353.28 that appears on the RISA. (A copy of the Affidavit is attached as Exhibit D.) In the Affidavit, the Defendant asserts the price of the Mercedes the Plaintiffs purchased was "the anticipated balance due on the Taurus car loan [the car the Plaintiffs traded-in] of $10,000 plus $9,300 from the plaintiffs by cash or financing." Neither the Affidavit nor the RISA account for what happened to the Taurus the Plaintiffs gave the dealership.[10]

In response to the Affidavit, the Plaintiffs have filed a Motion to Amend and a proposed Amended Complaint asserting the Defendant converted/stole the Taurus they traded in as part of this transaction. Their basis for the claim is the fact that King Richard's required them to give

[8] The calculations that generated these figures are provided as part of Exhibit C.

[9] This amount is greater than the .125% "tolerance" allowable under TILA. 15 USC §1606(c)

[10] In Exhibit E, which the Defendant provided with its Motion for Summary Judgment, the Defendant asserted $4,500 more was owed on the Taurus than it was worth. From its Affidavit we now know that $9,646.72 was owed on the Taurus. That means, after paying off the Taurus, whoever kept it had an asset worth $5,146.72.

them their Taurus free and clear of any liens yet they gave the Plaintiffs no credit for the vehicle. As evidence, they point to the absence of any credit for the Taurus on the RISA or in the Defendant's Affidavit.

To understand the importance of this credit issue, consider what the TILA disclosure in this transaction looks like now (with King Richard's not giving the Plaintiffs any credit for the Taurus) and what it would have looked like if King Richard's had given the Plaintiffs credit for the Taurus:

| | I | III[11] | |
|---|---|---|---|
| | As Disclosed On RISA | If Dealer Had Credited the Value of the Trade-in to the Fitts | Difference |
| Amount Financed | $21,619.72 | $16,473.00 | $5,146.72 |
| Finance Charge | $9,287.72 | $14,434.44 | $5,146.72 |
| Annual % Rate | 12.39% | 23.14% | 10.75[12] |
| | | | |

***Table 2***

To the Plaintiffs, the Defendant appears to be in the impossible situation of having to either:

A) stand by its Affidavit and the RISA, which establish it gave the Plaintiffs no credit for the trade-in and thereby strengthens the Plaintiffs' Conversion claim; or

B) amend its Affidavit to account for the value of the Taurus, which may require them to admit the disclosures on the RISA were inaccurate.

In light of the foregoing, and in the interest of promoting the efficient administration of justice, the Plaintiffs request the Court hold off on ruling on the pending Motions for Summary

[11] The calculations that generated these figures is provided as part of Exhibit C.

[12] This amount is greater than the .125% "tolerance" allowable under TILA. 15 USC §1606(c)

Judgment until it rules on their Motion To Amend and, if the motion is granted, until the Defendant has responded to the proposed Amended Complaint.

**4. Actual Damages**

If the Plaintiffs prevail on any claim cognizable under TILA in this litigation, they are entitled to recover the actual damages they suffered.[13] The Defendant asserts the Plaintiffs did not suffer any actual damages; the Plaintiffs contend they did. Specifically, and as will be included in an Affidavit, the Plaintiffs contend:

> If they realized the price of the Mercedes was being inflated by $10,000 to pay off the Taurus, and the dealer was going to keep the Taurus and give them no credit for it, they would not have agreed to buy the Mercedes. However, they relied on the RISA and the confusing disclosures contained on it and made contemporaneously with it, and went through with the transaction. Their actual damages include the value of the Taurus the dealer kept, all the costs they incurred as a result of owning the Mercedes, and Lorraine Fitts' mental pain and suffering arising from the transaction.

**5. Attorney Fees**

Under the Truth In Lending Act, whenever a plaintiff recovers actual or statutory damages he must also be awarded "the cost of the action, together with a reasonable attorney's fee as determined by the court."[14] Attorney fee awards under TILA are mandatory.[15] Fees

---

[13] 15 USC §1640(a)(1)
[14] 15 USC §1640(a)(3)

awards are generally to be determined by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate.[16] Attorney fee awards usually may not be limited by, or tied to, the amount the consumer recovers.[17] The mandatory fee provisions of the Act properly encourage consumers to police the credit market by pursuing claims that would otherwise not make financial sense to pursue.[18]

## 6. Conclusion

This litigation could have been avoided if King Richard's had complied with the well known rules for disclosing negative equity that are contained in Regulation Z; the regulations that implementing the Truth In Lending Act. Because it decided to ignore the regulations, and obscure the financial underpinnings of the transaction between it and the Fitts, the Fitts suffered actual damages and they are entitled to statutory damages and attorney fees under the Truth In Lending Act.

---

[15] *See* DeJesus v Banco Popular de Puerto Rico, 918 F2d 232, _ (1st Cir. 1990) *holding "[t]he language in section [15 USC §]1640(a) unequivocally entitles a successful Truth-in-Lending plaintiff to an award of attorney's fees. . . ."*

[16] *See* Hensley v Eckerhart, 461 US 424, 103 S Ct 1933, 76 Led 2d 40 (1983) *a civil rights case in which the Court explained this 'lodestar' approach was generally applicable to all cases in which Congress provided for attorney fees by statute.*

[17] Nigh v Koon Buick Pontiac GMC, 478 F3d 183, 190 (4th Cir. 2007)

[18] Jaffee v Redmond, 142 F3d 409 (7th Cir. 1998)

The Plaintiffs,
By Their Attorney,

/s/ John T. Longo
___________________________

John T. Longo, Esq./#4928
681 Smith Street, Suite 201
Providence, RI 02908
(401) 272-2177
Fax (401) 537-9185
jtlongo@yahoo.com

**Certificate of Service**

I certify that on ___6/25/08____________ I electronically filed this document with the Clerk of the federal District Court for the District of Rhode Island using the CM/ECF System. The following participants received notice electronically:

Michael A. DeSisto, Esq. michael@desistolaw.com
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

/s/ John T. Longo
_________________________

John T. Longo, Esq./#4928